No. 47,497

BILL GEORGE CHRYSLER-PLYMOUTH, INC., *Appellant*, v. DARRELL D. CARLTON, State Labor Commissioner, By and Through Vern Miller, Attorney General of the State of Kansas, *Appellee.*

(532 P. 2d 1351)

Opinion filed March 1, 1975.

*Wayne H. Phillips,* of Kansas City, argued the cause, and was on the brief for the appellant.

*Marlin A. White,* of Holton, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This appeal stems from a ruling by the Kansas Labor Commissioner, denying the appellant an evidentiary ruling, after a full hearing, by invoking the jurisdictional fifteen-day appeal provisions of K. S. A. 44-710b (a). The district court sustained the ruling of the commissioner and appeal has been duly perfected to this court.

The appellant contends the commissioner's decision is unreasonable, arbitrary and capricious.

The facts are stipulated. On July 30, 1969, Delbert C. Loughery, (hereafter referred to as claimant) was discharged from the employment of B & G Chrysler-Plymouth (hereinafter sometimes referred to as the preceding employer). Thereafter claimant registered for the receipt of unemployment benefits. On August 11, 1969, a notice was sent pursuant to K. S. A. 44-709 (b) informing the preceding employer that in the event they disputed benefits paid the claimant, which were charged to their experience rating account, they must file an appeal within twelve days of the date of mailing. This notice was not returned as undeliverable, and the preceding employer did not file an appeal to this charge determination.

Benefits were paid to claimant for a period from August 16, 1969, until February 9, 1970, totaling $1,430.

On October 16, 1969, Bill George Chrysler Plymouth, Inc., appellant, acquired all the assets of B & G Chrysler-Plymouth, and on November 3, 1969, the appellant applied for a transfer of experience rating, pursuant to K. S. A. 44-710a (b). Shortly thereafter, on November 26, 1969, the appellant was assigned the preceding employer's contribution experience rating of 1.15%.

On January 15, 1970, the appellant received notice that its contribution rate for the year 1970 would be at 1.00%.

On January 11, 1971, the appellant was notified his contribution rate for 1971 would be 2.15%. This notice charged the appellant's account with $1,430 for benefits paid to claimant. Thereafter the appellant complained of errors in the computation of his contribution rate on matters not in issue in the case at bar. The employment security division (hereinafter referred to as the agency) adjusted the contribution in an amended experience rating order dated March 15, 1971. The appellant corresponded with the agency on April 30, 1971, as to why his experience rating had been increased

so sharply over the prior year. The agency replied on May 11, 1971, and no further action was taken by the appellant at that time.

After being discharged by his preceding employer in August 1969, claimant filed an action with the National Labor Relations Board on December 23, 1969, contending he was wrongfully discharged. A hearing was held on March 9, 1971, and the appellant was ordered:

". . . [T]o reinstate Loughery to his former or substantially equivalent employment and to make Loughery whole for any loss of pay he may have suffered because of the discrimination against him, by paying to him a sum of money equal to the amount he would normally have earned from August 1, the date of the discrimination against him, to the date respondent makes a firm and good faith offer of reemployment to him."

Pursuant to the N. L. R. B. order Loughery received $2,600 less deductions for a net sum of $1,717.30 on June 3, 1971.

Shortly after being reinstated claimant again became unemployed and was qualified to receive unemployment benefits for a second time by virtue of the back wages paid pursuant to the N. L. R. B. ruling. (*Social Security Board v. Nierotko*, 327 U. S. 358, 90 L. Ed. 718, 66 S. Ct. 637, 162 A. L. R. 1445.) Claimant received benefits in the amount of $304 as a result of the second termination, and that amount was charged to the appellant's experience rating account and reflected in his experience rating notice for 1972, dated January 10, 1972.

On January 18, 1972, the appellant wrote the agency and complained about the new rate. Subsequent to sending this letter the appellant filed a formal application for review and redetermination of the appellant's "rate determination heretofore received on or about the 10th day of January, 1972, and on which objection was mailed January 18, 1972, within the 15 day requirement of K. S. A. 44-710b, no reply having been received thereto."

A hearing was conducted on May 15, 1972, concerning the appellant's application for review. As a preliminary matter the Hearings Officer observed that neither the application for review nor its envelope disclosed a date but he noted "the application for review and redetermination does say that *it was mailed January 18, 1972*. So I think we can safely assume here that it was filed, *it was a timely filed appeal*." (Emphasis added.)

The Hearings Officer found in his recommended decision to the commissioner that the N. L. R. B. back pay award constituted wages paid by the appellant for the period of time covered by the order;

the benefits charged to the appellant's experience rating account in the amount of $1,430 in the amended experience rating notice mailed March 15, 1971, represents unemployment during the time the appellant was later required to pay claimant wages; therefore, the hearing examiner concluded, the employer should not have charged to its experience rating account the $1,430 paid as unemployment insurance benefits to claimant, and the experience rating account for the employer should be recomputed beginning with the year 1971.

The Hearings Officer noted the decision did not determine an overpayment against claimant for the $1,430 because claimant was not a party to this appeal, and the issue of an overpayment was not before the commissioner.

Following the hearing the appellant, through counsel, sent a letter to an agency attorney over concern expressed regarding the appellant's failure to file objections when the rating was originally increased, stating:

"1. At the time the original payment was made, there was no objection on our behalf for two reasons: (a) We were not the employer, it being the former corporation, and (b) The N. L. R. B. action had not been instituted.

"2. My client, Bill George, purchased the company on October 16, 1969. Any further correspondence to the former owners went to the former president who then moved to Louisiana.

"3. The N. L. R. B. complaint was instituted December 23, 1969, and the final ruling made thereon March 9, 1971.

"So, until we found that we were liable for wages to Mr. Loughery, we had no reason to follow the statutory procedure on objecting to the inclusion of the 1969 payment in our rate determination."

On January 17, 1973, a rehearing was conducted concerning the appellant's application for review. At this proceeding, Mr. Duane Roberts, chief attorney for the agency, submitted for the record his interpretation of the applicable statutes and their application to the facts of this appeal. Mr. Roberts stated it has always been the position of the agency's legal department, in appeals from K. S. A. 44-710b for review of assigned contribution rates that K. S. A. 60-206 of the Civil Code of Procedure applied and may be used by the State Labor Commissioner for the purpose of enlarging the appeal time as a result of excusable neglect. Mr. Roberts further stated under K. S. A. 44-703 (*m*) an individual shall be deemed unemployed for a particular week only where he performed no services and where no wages are payable to him with respect to that week (see *Erickson v. General Motors Corporation*, 177 Kan. 90, 276 P. 2d 376). There-

fore, claimant was not "unemployed" within the meaning of the act for the period from August 1969 to February 1970, because he received wages pursuant to the N. L. R. B. order. Mr. Roberts also noted the appellant made contributions into the employment security fund on the back wages, and the claimant was permitted to receive unemployment benefits after his second termination on the basis of having received $2,600 (minus deductions) as wages. Mr. Roberts continued as follows:

". . . However, under the letter that is in exhibit here, it appears to me regardless of any questions of appeal time from Notices of Determination, that certainly there would be, at least the employer would be entitled to consideration as to whether or not there is excusable neglect for not filing [an appeal for] the period of time when the $1430. was reported against his account."

On March 1, 1973, after reviewing all the evidence together with transcripts of the hearings, the commissioner found benefits paid to the claimant in the amount of $1,430 were properly assessed against the appellant's experience rating account. The rationale of the decision barring the appellant's application for review on the ground of failure to assert a timely appeal is twofold: (1) B & G (appellant's predecessor) was notified pursuant to 44-709 (*b*) that the Loughery benefits would be charged to B & G's account and no appeal was taken within the prescribed twelve day appeal period; consequently, the charges were binding on B & G. The commissioner concluded the appellant was also bound by B & G's failure to appeal because the appellant was a successor employer (K. S. A. 44-710a [*b*]). The decision notes that as a successor employer the appellant enjoyed the benefit of a contribution rate somewhat lower than would have been assigned had the appellant not obtained such a classification, and that along with the benefits of the classification, the appellant must "assume certain liabilities which are set out in the law and one of those is the liability for benefits paid a claimant who was discharged by his predecessor employer."; (2) On January 11, 1971, the appellant received notice (pursuant to K. S. A. 44-710b) that his contribution rate for 1971 would be 2.15% and this notice became final when the appellant failed to appeal the determination within fifteen days. The commissioner concluded the appellant could not now seek a review for the benefits paid the claimant amounting to $1,430 which were assessed against the appellant's experience rating account.

Thereafter the appellant filed a petition in the Wyandotte County District Court for judicial review of the commissioner's decision as

provided by K. S. A. 44-710b (*b*). The appellant's petition alleged the commissioner's decision "was unreasonable, arbitrary and capricious and considered only the timeliness of petitioner's original appeal filing and not the true issues involved, from which petitioner has no adequate remedy at law."

The district court after reviewing the transcript of the proceedings and evidence affirmed the commissioner's decision. Thereupon an appeal was duly perfected to this court pursuant to K. S. A. 44-710b (*c*).

What the appellant seeks in this case is an interpretation of the Employment Security Law which the labor commissioner construed as limiting his jurisdiction.

Where the facts are undisputed, as here, the applicability of a statute to the facts is a question of statutory construction to be determined by the court. (*Social Security Board v. Nierotko,* supra.) In *Tillotson v. Abbott,* 205 Kan. 706, 472 P. 2d 240, this court said:

> "The interpretation placed upon a statute by an administrative agency whose duties are to carry the legislative policy into effect should be given consideration and weight when the statute is ambiguous and the intent of the legislature is not cletar. (See *Lowden v. Garvie,* 152 Kan. 388, 103 P. 2d 832; *Graves v. Armstrong Creamery Co.,* 154 Kan. 365, 118 P. 2d 613, 140 A. L. R. 1267n.) However, this does not mean this court must follow an administrative interpretation placed upon a statute when the interpretation of the administrative body is erroneous. We will examine this statute in light of the facts of this case to determine its applicability." (p. 713.)

As a preliminary matter it must be recognized that "back pay" awards constitute wages paid by the employer for the period of time covered by the order. The United States Supreme Court in *Social Security Board v. Nierotko,* supra, held "back pay" awarded by the National Labor Relations Board upon the reinstatement of a wrongfully discharged employee, upon being credited to the employee's old age benefit account under the Social Security Act (49 Stat. 662), must be allocated to the calendar quarters of the year in which the money would have been earned if the employee had not been wrongfully discharged. In the opinion the court said:

> ". . . [W]e think it plain that an individual, who is an employee under the Labor Act and who received 'back pay' for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the Social Security Act definitions which define wages as 'remuneration for employment' and employment as 'any service . . . performed . . . by an employee for his employer. . . .'" (p. 364.)

The rule finds support in language used by this court in *Southwestern Bell Telephone Co. v. Employment Security Board of Review*, 189 Kan. 600, 371 P. 2d 134, 93 A. L. R. 2d 1312, establishing the criteria for defining wages within the Employment Security Law, where it was said:

". . . Generally speaking, wages are tied to the week of work and not to the week in which they are paid. In order to associate pay with specific weeks, there must be some connection between the two. The termination allowances here involved were in no way related to or dependent upon the claimants' employment status after termination. . . ." (p. 605.)

Another decision supporting the rule is CCH [February, 1972 —March, 1973, Transfer Binder] Unemployment Insurance Reporter ¶ 16726, where payments were made by a corporation to its employees resulting from a suit for violation of Title VII of the Civil Rights Act of 1964. These were held to be includible as compensation in the employees' gross income and to be "wages" for employment tax purposes. Since the payments were ordered as "remuneration" for services, they were said to be wages for the purpose of taxes imposed by the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, and the Federal Income Tax.

In the instant case the claimant employee was reinstated by an order of the N. L. R. B. and the wages paid to him were for a specific period of time. Federal and state withholding tax deductions were made from the $2,600 which the N. L. R. B. ordered the appellant employer to pay.

Until the appellant paid the claimant wages in 1971 pursuant to the N. L. R. B. order, requiring the appellant to reinstate the claimant and to make him whole for any loss of pay he may have suffered, which covered the period of time the claimant was paid benefits of $1,430 under the Employment Security Law, the appellant had no valid cause for complaint by reason of experience rating notices.

Had the appellant filed an application for review and redetermination pursuant to an experience rating notice, establishing the employer's rate of contributions and of its benefit liability, prior to the notice of January 10, 1972, *the appellant could have set forth no valid reasons to justify a review and redetermination* as required by K. S. A. 44-710b (a). Accordingly, the appellant cannot be charged with neglect in failing to file an application for review and redetermination prior to the application made on Janu-

ary 18, 1972. This appeal was filed within fifteen days of the Experience Rating Notice disclosing the determination of the appellant's 1972 contribution rate, as required by 44-710b (*a*), supra.

It is clear from the Employment Security Law, and in particular K. S. A. 44-710a, that the contribution rates fixed by the commissioner for an employer are determined by classifying the employer *in accordance with the employer's actual experience* in the payment of contributions on the employer's own behalf "and with respect to benefits charged against" the employer's accounts. Computation of the employer's experience takes into consideration *all* of the employer's contributions paid on its own behalf *for all "past years" and the total benefits charged to the employer's account for all such years.* Therefore, the experience rating of an employer is directly dependent upon *the employer's experience for all prior years regarding the cost of benefits paid that are attributable to service in the employment of such employer.*

Since the facts giving rise to the erroneous experience rating of the appellant for the year 1972 first occurred in the year 1971, establishing that the employer should not have charged to its experience rating account the sum of $1,430, paid as unemployment insurance benefits to the claimant, the appellant is entitled to have his experience rating recomputed beginning with the year 1971. The first opportunity the appellant had to challenge *the erroneous determination of its experience rating* was by appealing from the experience rating notice dated January 10, 1972. An appeal was duly perfected within fifteen days from this date.

The judgment of the lower court is reversed with directions to remand the case to the labor commissioner for action consistent herewith.